

AO 91 (Rev. 11/11) Criminal Complaint            AUSA Robert Ladd (815) 987-4478

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

UNITED STATES OF AMERICA

v.

BENIGNO SANCHEZ

CASE NUMBER: **23CR50015**
UNDER SEAL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about March 22, 2023, at Rockford, Illinois, in the Northern District of Illinois, Western Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1), (b)(1)(vi), and 846 | Did attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely, 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

DANIEL SCHUTZ
Special Agent, Homeland Security Investigations (HSI)

Sworn to before me and signed in my presence.

Date: March 22, 2023

Judge's signature

City and state: Rockford, Illinois

Margaret J. Schneider, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, Daniel Schutz, being duly sworn, state as follows:

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been so employed for approximately four years.

2. As part of my duties as an HSI Special Agent, I investigate criminal violations relating to controlled substance trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3. I have received training in controlled substance investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substance laws.

4. This affidavit is submitted in support of a criminal complaint alleging that Benigno SANCHEZ has violated Title 21, United States Code, Section 841(a)(1),

(b)(1)(vi), and 846. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SANCHEZ with attempted possession with intent to distribute a controlled substance, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

5. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and on information provided to HSI and obtained during search warrants.

## I. FACTS SUPPORTING PROBABLE CAUSE

6. On or about March 14, 2023, International FedEx parcel bearing tracking number 3957 3786 4019 ("**Subject Parcel**") entered the United States via Memphis, Tennessee from Chihuahua, Mexico. **Subject Parcel** is approximately 41 centimeters by 34 centimeters by 27 centimeters and weighs approximately 5 kilograms. The "package type" was described as "Mexican Crafts for Making Corn Tortillas" on the shipping label. **Subject Parcel** was addressed to "Juan Martinez, 809 Ferguson Street, Rockford, IL 61102" (the **Subject Premises**). The shipping label attached to the package listed the sender as "Karla Karina Martinez Rubio, Mariano Guillen 9614, Las Malvinas, Chihuahua, CH 31456, MX" (the "**Shipper Address**").

7. On or about March 14, 2023, while performing pre-arrival manifest review at the FedEx hub in Memphis, Tennessee, Customs and Border Protection

(CBP) selected the **Subject Parcel** for an exam. The Fedex hub in Memphis, Tennessee is one of several arrival sites for international FedEx shipments arriving in the United States and was the first point of entry into the United States for the **Subject Parcel**.

8. Once the shipment arrived at the CBP exam area, the **Subject Parcel** was passed through an x-ray. Anomalies were noticed and the **Subject Parcel** was opened for an intrusive exam.

9. The intrusive exam of the Subject Parcel yielded a wooden tortilla press. A small hole was drilled into a part of the wooden tortilla press revealing an unknown blue pill. A sample of the pill was field tested using the Rapid Response Fentanyl Test Strips and tested positive for the presumptive properties of fentanyl, a Schedule II controlled substance. The fentanyl pills were extracted from the tortilla press and seized. CBP determined the total approximate weight of the fentanyl pills as 678.7 grams.

10. Based on my training and experience, the quantity of fentanyl contained in the **Subject Parcel** is intended for distribution rather than for personal consumption. In addition, based on my training and experience, the concealment method is consistent with the way drug traffickers conceal controlled substances to avoid detection and ensure that the substances make it through a customs inspection.

11. On or about March 19, 2023, the **Subject Parcel** and its contents, were seized by Customs and Border Protection and turned over to HSI Memphis. HSI Memphis shipped the **Subject Parcel** via US Postal Service to HSI O'Hare (Chicago,

IL) in a larger box to preserve the integrity of the original parcel.

12. Law enforcement agents removed the fentanyl pills discovered in the **Subject Parcel** and replaced them with sham substances. Law enforcement then rewrapped the **Subject Parcel** to give the appearance that the parcel was never opened.

13. On March 22, 2023, I applied for the application of a tracking device for the **Subject Parcel,** which was granted. HSI agents placed in the **Subject Parcel** an optical detection device and a filament detection device, which emit a recognizable signal to law enforcement when the **Subject Parcel** is opened, and an electronic tracking device, which enables law enforcement to monitor the movement of the **Subject Parcel** via GPS.

14. As part of the application of a tracking device, law enforcement agents applied an iridescent power to the contents of the **Subject Parcel**, which will glow when exposed to a blacklight.

15. On March 22, 2023, HSI agents, acting in an undercover capacity, performed a controlled delivery of the **Subject Parcel** at the **Subject Premises**. An undercover HSI agent, posing as a FedEx employee, physically delivered the **Subject Parcel** to Individual A at the **Subject Premises**. Individual A took the **Subject Parcel** into the **Subject Premises**, but the **Subject Parcel** was not opened according to the tracking device.

16. Shortly thereafter, surveilling agents saw SANCHEZ depart the adjacent residence at 810 Ferguson Street, Rockford, Illinois, and enter the **Subject**

**Premises**. Upon SANCHEZ's entry into the **Subject Premises**, the **Subject Parcel** began moving, according to the tracking device.

17. Surveilling agents saw SANCHEZ leave the **Subject Premises** in a vehicle. Based on the GPS information we received from the **Subject Parcel**, I believed the **Subject Parcel** was in SANCHEZ's vehicle.

18. SANCHEZ traveled to an address on 5th Street, Rockford, Illinois, and entered the apartment building at that location with the **Subject Parcel**. When HSI agents arrived in the area of the apartment building, they received notification from the tracking device that the **Subject Parcel** had been opened.

19. Shortly thereafter, SANCHEZ and Individual B exited the apartment building without the **Subject Parcel**. HSI agents made contact and spoke with SANCHEZ and Individual B. During the conversation with SANCHEZ, SANCHEZ stated, "I know why you guys are here, I fucked up."

20. Individual B granted consent to search his apartment on 5th Street, Rockford, Illinois. HSI agents searched Individual A's apartment and located the **Subject Parcel**, which had been opened. The wooden tortilla press had been destroyed and torn apart, and the sham substance had been removed from the hidden compartment within the tortilla press, and was on the table next to the remains of the **Subject Parcel**. A hammer and screwdriver were located in the vicinity of the **Subject Parcel**, and some of the sham substance was located on the table.

21. Law enforcement checked SANCHEZ's hands and Individual B's hands with a blacklight to ascertain if either individual had handled the contents of the

**Subject Parcel.** Both SANCHEZ's hands and Individual B's hands glowed when exposed to a blacklight, indicating that both their hands had come in contact with the contents of the **Subject Parcel.**

## II. CONCLUSION

22. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that on or about March 22, 2023, Benigno SANCHEZ attempted to knowingly and intentionally possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(vi), and 846.

FURTHER AFFIANT SAYETH NOT.

_____
DANIEL SCHUTZ
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN to before me on March 22, 2023.

_____
Honorable Margaret J. Schneider
United States Magistrate Judge

2